FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF NEW BERN, NORTH CAROLINA v. BRANCH BANKING & TRUST COMPANY, A BANKING CORPORATION; CHASE MANHATTAN BANK OF NEW YORK, A BANKING CORPORATION; THE HANOVER INSURANCE COMPANY, A CORPORATION; AND UNITED STATES FIRE INSURANCE COMPANY, A CORPORATION

No. 39

(Filed 11 October 1972)

1. **Rules of Civil Procedure § 56— motion for summary judgment — burden of proof**

Irrespective of who has the burden of proof at trial upon issues raised by the pleadings, upon motion for summary judgment the burden is upon the party moving therefor to establish that there is no genuine issue of fact remaining for determination and that he is entitled to judgment as a matter of law.

Savings & Loan Assoc. v. Trust Co.

2. **Bills and Notes § 7; Rules of Civil Procedure § 56— motion for summary judgment — affidavit based on hearsay — issue of forgery**

    In an action by a savings and loan association to recover an amount charged back against it by a bank because of the purported forgery of the indorsement of one of the payees on a draft issued by defendant insurance company, an affidavit by defendant's attorney was insufficient to show that there is no genuine issue of fact as to the forgery where it was based on hearsay and incorporated an affidavit of another person concerning the forgery which was hearsay as to the attorney.

3. **Bills and Notes § 2; Uniform Commercial Code § 25— draft — absence of words of negotiability — applicability of U.C.C.**

    A draft payable to two named payees without the addition of the words "or order" or any similar words of negotiability is not a negotiable instrument; nevertheless, Article 3 of the Uniform Commercial Code applies to the draft, except that no holder of it could be a holder in due course. G.S. 25-3-805.

4. **Bills and Notes § 7; Uniform Commercial Code § 26— forgery of indorsement of one payee — interest of transferee**

    Where plaintiff, a savings and loan association, took a draft upon the indorsement of one of the payees and the forged indorsement of the other, such transfer conferred upon plaintiff the interest of the payee who indorsed the draft, and no more. G.S. 25-3-202(3).

5. **Bills and Notes § 7; Uniform Commercial Code § 26— draft — forgery of indorsement of one payee — interest of other payee — issue of fact**

    In an action by plaintiff savings and loan association to recover an amount charged back against it by a bank because of the forgery of the indorsement of one of the two payees named in a draft issued by defendant insurance company, an issue of material fact raised by the pleadings existed as to the extent of the interest, if any, the payee who indorsed the draft had in the proceeds and which, by her indorsement, she transferred to the plaintiff.

6. **Uniform Commercial Code § 25— drawee of a draft**

    An insurance company which issued a draft, not the collecting bank, was the drawee of the draft. G.S. 25-3-120.

7. **Bills and Notes § 7; Uniform Commercial Code §§ 30, 40— genuineness of indorsement of draft — liability of drawee**

    The drawee of a draft is not held to know the signature of an indorser, whether the payee or an intermediate indorser, and is under no duty to examine the draft to determine the genuineness of an indorsement, but may rely upon the warranty made to him by the person receiving payment that such person has title to the instrument.

8. **Bills and Notes § 7; Uniform Commercial Code § 40— forgery of indorsement — knowledge by drawee — notice to bank of deposit — reasonable time**

    When the drawee of a draft learns that an indorsement, necessary to the title of the person who has received payment, is forged, the

drawee must then act with reasonable promptness or his right to recover from the person receiving payment, or a prior indorser, will be barred to the extent of any loss which such person sustains by reason of the drawee's delay. G.S. 25-4-207.

9. **Bills and Notes § 7; Uniform Commercial Code § 40— drawee's knowledge of indorsement forgery — notice to bank of deposit — reasonable time — issue of fact**

In an action by plaintiff savings and loan association to recover an amount charged back against it by a bank because of the forgery of the indorsement of one of the two payees named in a draft issued by defendant insurance company, a genuine issue of material fact raised by the pleadings existed as to when defendant discovered the forgery of the indorsement and whether defendant was negligent in failing to give plaintiff notice of lack of title to the draft due to the forgery until approximately 27 months after defendant paid the draft.

10. **Bills and Notes § 7; Uniform Commercial Code § 40— drawee's knowledge of indorsement forgery — notice to bank of deposit — reasonable time**

There is no rule of law establishing the time within which the drawee must notify the person receiving payment, or a prior indorser, that such person's title to the draft was defective by reason of a forged indorsement; a reasonable time for such action depends upon the circumstances in each case.

11. **Rules of Civil Procedure § 56— summary judgment — actions involving reasonable care**

Generally, summary judgment is not appropriate in actions wherein the right of recovery depends upon the exercise of reasonable care.

CERTIORARI to the Court of Appeals to review its judgment, reported in 14 N.C. App. 567, 188 S.E. 2d 661, affirming summary judgment by *Rouse, J.,* on motion of defendant, The Hanover Insurance Company, at the November 1971 Civil Session of CRAVEN.

The complaint purports to allege two causes of action against the defendants Branch Banking & Trust Company, Chase Manhattan Bank of New York and The Hanover Insurance Company, hereinafter called Branch, Chase and Hanover, respectively, and a third cause of action against the defendant United States Fire Insurance Company only.

For the first cause of action against Branch, Chase and Hanover, the complaint alleges:

On 26 June 1968, Hanover issued and delivered its draft for $11,107.71 payable to Geraldine M. Stallings and Winter Park Federal Savings & Loan Association, hereinafter called Winter Park, the draft being payable through Chase upon acceptance. On 5 July 1968, the draft, indorsed by the payees, was deposited with the plaintiff and credited to the account of Geraldine M. Stallings, the plaintiff thereby becoming the absolute owner of the draft. On 8 July 1968, the plaintiff deposited the draft in its account with Branch in the regular course of its business. On 10 July 1968, the draft was accepted by Hanover and paid through Chase. Thereafter, the plaintiff permitted Geraldine M. Stallings to withdraw from her account the full amount of the proceeds of the draft. On 5 October 1970 (approximately 27 months after payment of the draft), Hanover and Chase wrongfully charged back the amount of the draft to Branch, and Branch wrongfully charged back the amount to the plaintiff. Branch now wrongfully withholds the amount of the draft from the plaintiff. At the time the draft was deposited with the plaintiff, the plaintiff was entitled to receive the proceeds thereof. Neither Branch, Chase nor Hanover did anything inconsistent with the acceptance and payment of the draft until such charge-backs occurred and the plaintiff at all times relied upon the acceptance and payment of the draft. The plaintiff is entitled to recover from Branch, Chase and Hanover the amount of $11,107.71 with interest.

For the second cause of action against Branch, Chase and Hanover, the plaintiff alleges in its complaint:

The defendants negligently induced and permitted the plaintiff to act and rely upon the acceptance and payment of the draft and ultimately to pay over the amount thereof to Geraldine M. Stallings. They did not, until after a great lapse of time following the payment of the draft, do anything inconsistent with an admission of the ownership of the draft by the plaintiff. They failed to use reasonable care to advise the plaintiff of any facts and circumstances inconsistent with the ownership of the draft by the plaintiff. By reason of the failure of the defendants to use due care and to give notice within a reasonable time of any facts contrary to the ownership of the draft, the plaintiff has been damaged in the amount of $11,107.71.

For the third cause of action, which is against the United States Fire Insurance Company only, the plaintiff alleges that

on 1 January 1968, this defendant executed and delivered to the plaintiff its bond which provided that this defendant would indemnify the plaintiff against any losses through forgery of any instrument. If it should be determined that the plaintiff is not entitled to the relief prayed for against Branch, Chase and Hanover in the first and second causes of action, such determination would be for causes insured against by the United States Fire Insurance Company in its said bond, and in such event, the plaintiff is entitled to recover $11,107.71, with interest from the United States Fire Insurance Company.

Hanover filed its answer, asserting four defenses: First, that the complaint fails to state a claim against Hanover upon which relief can be granted; second, that the action should be stayed until the resolution of a previously instituted action by Winter Park against the plaintiff involving the same transaction; third, that all of the allegations of the second cause of action set out in the complaint and all material allegations of the first cause of action are denied except Hanover's issuance of the draft as described in the complaint, the deposit of the draft by the plaintiff in its account with Branch and payment of the draft on 10 July 1968 through Chase; and fourth:

On 26 June 1968, Hanover issued its draft, as described in the complaint, and delivered it to Geraldine M. Stallings. The draft was presented for payment and was paid through Chase on 10 July 1968. The draft was indorsed by the plaintiff and deposited with Branch. It then passed through the regular commercial channels, each bank guaranteeing to Hanover the genuineness of the indorsements by the payees. After payment of the draft, Winter Park gave notice to Hanover of its non-receipt of payment and submitted to Hanover proofs that the purported indorsement of the draft by Winter Park was a forgery. Hanover and Chase exercised due diligence following the ascertainment of the forgery and issued notices of dishonor and charged the amount of the draft back through the commercial channels to the plaintiff. Hanover has received repayment of the amount of the draft and, under its contract of insurance with Winter Park, thereafter paid Winter Park $11,107.71. The forged indorsement is pleaded by Hanover as an affirmative defense in bar of any right of recovery by the plaintiff from Hanover.

Hanover moved for summary judgment dismissing the action on the ground that there is no genuine issue as to any

material fact and that from the pleadings and an attached affidavit and matters incorporated therein by reference, it is entitled to such judgment as a matter of law.

Attached to and in support of the motion for summary judgment was an affidavit of David L. Ward, Jr., Attorney for Hanover. This affidavit asserts: The draft in question was delivered to Geraldine M. Stallings and was thereafter deposited with the plaintiff; at the time of such deposit the indorsement of Winter Park had been forged and, upon notice and pusuant to normal banking procedures, the amount of the draft was charged back to the plaintiff, it being the original holder under the forged indorsement; in the interim, Winter Park brought an action against the present plaintiff to collect from it the amount of the said draft, which action is still pending; First Federal has filed in that action a counterclaim covering the same claim made by it in the present action; and in that action there had been filed an affidavit of Agnes L. Coate, a copy of which was attached to and incorporated by reference into the affidavit of David L. Ward, Jr.

The affidavit by Agnes L. Coate, so attached to the affidavit of Mr. Ward, states that she was secretary-treasurer of Winter Park and that the draft here in question "was not endorsed by the bank"—i.e., Winter Park—and the signature upon the draft, purporting to be that of Agnes L. Coate, was not her signature but a forgery.

On 5 November 1971, Hanover served upon counsel for the plaintiff notice of its motion for summary judgment on the ground that there is no genuine issue as to any material fact, stating therein that it would move the court for such judgment at the 22 November 1971 Session.

No counter affidavit or other evidence was offered by the plaintiff at the hearing upon the motion for summary judgment, though counsel for the plaintiff and for the other defendants appeared and were heard. The court allowed the motion and entered judgment dismissing the action as to Hanover with prejudice. The record does not disclose what disposition of the action has been made as to the other defendants.

On appeal, the Court of Appeals affirmed the judgment on the ground that Hanover, having presented affidavits to the effect that the indorsement of Winter Park was a forgery and

that the draft was charged back in normal collection channels according to standard banking practice, the burden was upon the plaintiff to set forth specific facts showing a genuine issue for trial, and the plaintiff having presented nothing at the hearing except its complaint, summary judgment was properly entered. As to plaintiff's contention that it should be allowed to go to trial to show what interest Geraldine M. Stallings had in the draft and that such amount should not have been charged back to the plaintiff, the Court of Appeals said the complaint was silent on this point and in its answer Hanover alleges that the full amount of the draft was paid by it to Winter Park and that nothing in the record indicates Winter Park was not entitled to the full amount of the draft.

It appears from the answer filed by Hanover and upon the face of the draft that the draft was issued in payment of a loss under a contract of fire insurance. In the plaintiff's petition for writ of certiorari, it is stated that the insured property was in the State of Florida and was owned by Geraldine M. Stallings, subject to a deed of trust in favor of Winter Park as security for a loan made by it to her. Nothing in the record shows whether the draft was for an amount in excess of the balance due upon the loan so secured. The record does not indicate the date on which Hanover received notice that the indorsement of Winter Park upon the draft was a forgery, nor does the record indicate the date on which Geraldine M. Stallings withdrew the proceeds of the draft from her account with the plaintiff, except that this occurred at some time between the payment of the draft and the charge-back.

*Barden, Stith, McCotter & Sugg, by Laurence A. Stith, for plaintiff.*

*Ward, Tucker, Ward & Smith, by David L. Ward, Jr., and J. Troy Smith, Jr., for defendant.*

LAKE, Justice.

The question for decision is whether the record before us will support summary judgment for the defendant. Rule 56(c) provides that upon motion for summary judgment such judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to

any material fact and that any party is entitled to a judgment as a matter of law."

Paragraph (e) of this rule provides that when a motion for summary judgment is made and supported as provided in Rule 56, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." This paragraph of the rule then provides that if the adverse party "does not so respond, summary judgment, *if appropriate*, shall be entered against him." (Emphasis added.)

The plaintiff, though served with notice of the defendants' motion for summary judgment 17 days before the opening of the session at which the motion was heard, and though appearing at such hearing, filed no counter affidavit or other evidence and did not seek a continuance, as permitted by paragraph (f) of this rule, in order to permit the obtaining of affidavits, the taking of depositions or the filing of interrogatories. Thus, the question is whether summary judgment is appropriate, that is, whether the pleadings, together with the affidavit of Hanover's counsel, including the attachment thereto, show (1) that there is no genuine issue as to any material fact, and (2) that Hanover is entitled to a judgment as a matter of law.

Summary judgment is a drastic remedy. Its purpose is not to provide a quick and easy method for clearing the docket, but is to permit the disposition of cases in which there is no genuine controversy concerning any fact, material to issues raised by the pleadings, so that the litigation involves questions of law only. See: *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823.

[1] Irrespective of who has the burden of proof at trial upon issues raised by the pleadings, upon a motion for summary judgment the burden is upon the party moving therefor to establish that there is no genuine issue of fact remaining for determination and that he is entitled to judgment as a matter of law. Phillips, 1970 Supplement to McIntosh, North Carolina Practice and Procedure, 2d Ed., 1660.10. Dean Phillips also says in section 1660.5 of this supplement, "If the movant's forecast [of evidence which he has available for presentation at trial] fails to do this, summary judgment is not proper, whether

or not the opponent responds." Thus, as Judge Morris said for the Court of Appeals in *Pridgen v. Hughes,* 9 N.C. App. 635, 177 S.E. 2d 425, "The evidentiary matter supporting the moving party's motion may not be sufficient to satisfy his burden of proof, even though the opposing party fails to present any competent counter-affidavits or other materials."

[2] Paragraph (e) of Rule 56 provides that affidavits filed in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The affidavit of Mr. Ward, counsel for Hanover, which, together with an attached and incorporated affidavit by Agnes L. Coate made in another action, and a copy of the draft, is the sole support for Hanover's motion for summary judgment, does not meet the requirements of this portion of Rule 56. It does not show affirmatively that Mr. Ward is competent to testify, of his own personal knowledge, concerning the matters therein stated. The far greater probability is that his account of the delivery of the draft to Geraldine M. Stallings, of its deposit with the plaintiff and of the procedure followed in making the charge-back are based on hearsay. Clearly, the attached and incorporated affidavit of Agnes L. Coate concerning the forgery of Winter Park's indorsement is, as to Mr. Ward, hearsay. The Coate affidavit was prepared for and was filed in a different action between Winter Park and the present plaintiff. Nothing in the Ward affidavit brings the Coate affidavit within any exception to the hearsay rule. Thus, Mr. Ward, if called as a witness at the trial of the present action, would not be competent to testify to the fact of the alleged forgery. Since the affidavit filed by Hanover does not comply with Rule 56(e), the granting of its motion for summary judgment was error.

To send this action back to the superior court for further proceedings on that ground alone would merely invite a renewal of the motion for summary judgment, supported by affidavits from persons competent to testify concerning the matters set forth in the Ward affidavit. Consequently, we observe that, had the affiant Ward been competent to testify of his personal knowledge to all matters set forth in his affidavit and in the attachment thereto, the entry of a summary judgment in favor of Hanover upon such affidavit would not be appropriate for the further reason that it does not show "there is no genuine

issue as to any material fact" and that Hanover "is entitled to a judgment as a matter of law." While the Ward affidavit, if not subject to the above mentioned objections, considered in conjunction with the silence of the plaintiff, would have been sufficient to show that there is no genuine issue as to the fact of the forgery of the purported indorsement by Winter Park, or as to the facts that the draft was collected and then charged back by the respective banks, the establishment of these facts would not entitle Hanover to a judgment as a matter of law, there being other material issues raised by the pleadings and not touched by the Ward affidavit.

The complaint, liberally construed, alleges that Hanover, the drawee of the draft, negligently failed to give the plaintiff notice within a reasonable time of the plaintiff's lack of title to the draft due to the forgery of the indorsement of Winter Park and that, by reason of such negligence by Hanover and the charge-back, the plaintiff has been damaged. Hanover, in its answer, denies this allegation and affirmatively alleges that it exercised due diligence following its ascertainment of the forgery of the indorsement, issued notices of dishonor and charged the draft back through commercial channels. Upon these conflicting allegations, an issue of fact arises. The affidavit on which Hanover relies in its motion for summary judgment does not state when Hanover discovered the forgery of the indorsement or how soon thereafter it notified the collecting bank, the intermediate bank or the plaintiff. Nothing in Hanover's affidavit relates to whether Geraldine M. Stallings withdrew the amount credited to her account by the plaintiff before or after Hanover discovered the forgery of the Winter Park indorsement.

Again, construing the complaint liberally, it alleges that by virtue of the indorsement by Geraldine M. Stallings the plaintiff became the absolute owner of the draft. The answer of Hanover denies this allegation, thus raising an issue of law and of fact. Upon its appeal, both in the Court of Appeals and in this Court, the plaintiff contends that Geraldine M. Stallings had, at least, some interest in the draft, which interest passed to the plaintiff by her indorsement and subsequent withdrawal of the credit given her by the plaintiff. Nothing in Hanover's affidavit touches upon the extent of the interest, if any, which Geraldine M. Stallings had in the proceeds of the draft and which, by her indorsement, she transferred to the plaintiff.

Thus, there remain genuine issues of fact raised by the pleadings and not resolved by the affidavit in support of Hanover's motion. If these are material to the plaintiff's right to recover from Hanover, summary judgment in favor of Hanover was unauthorized.

[3] We observe that this draft was not a negotiable instrument since it was payable to the two named payees without the addition of the words "or order," or any similar words of negotiability. G.S. 25-3-104; G.S. 25-3-110. Nevertheless, Article 3 of the Uniform Commercial Code applies to this draft, except that no holder of it could be a holder in due course. G.S. 25-3-805. Thus, for the purposes of this appeal, the rights of the parties are to be determined as if the draft were a negotiable instrument.

[4] The plaintiff took the draft upon the indorsement of one of the payees and the forged indorsement of the other. Such transfer conferred upon the plaintiff the interest of Geraldine M. Stallings in the draft, and no more. G.S. 25-3-202(3) ; 11 AM. JUR. 2d, Bills and Notes, § 323; 10 C.J.S., Bills and Notes, § 194. Neither the right of Hanover, the drawee of the draft, to refuse to pay it upon presentment by one claiming under the indorsement of only one of the two joint payees nor Hanover's liability to the non-indorsing payee is before us. See, Britton, Bills and Notes, § 81. The draft was paid.

[5] The plaintiff alleges and Hanover admits that, thereafter, Hanover caused Branch to charge back to the plaintiff's account the full amount so paid by Hanover on the draft when it was presented for payment. If, as the plaintiff alleges, Geraldine M. Stallings, at the time of her indorsement to the plaintiff, was entitled to any part of the proceeds of the draft, this right passed to the plaintiff, and the plaintiff was entitled to retain that portion of the proceeds so paid by Hanover upon the presentment of the draft for payment. If, on the other hand, Winter Park was entitled to the full amount of the draft, as Hanover seems to imply in its allegation that, since the discovery of the forgery of the indorsement, it has paid the full amount to Winter Park, then the plaintiff, who succeeded to none of the rights of Winter Park, would have no right to retain any portion of the proceeds of the draft. Thus, a material issue of fact was raised by the pleadings in this action and the affidavit filed by Hanover in support of its motion for

summary judgment, even if otherwise competent, does not resolve this so as to show the absence of any genuine issue of fact in relation to this matter. The issue of fact which remains is the amount of interest, if any, of Geraldine M. Stallings in the proceeds of the draft which was transferred by her indorsement to the plaintiff.

[6] Hanover, not Chase, was the drawee of the draft. G.S. 25-3-120. The draft states upon its face that it was payable "upon acceptance." No acceptance appears upon the face of the paper. Therefore, it was not accepted. G.S. 25-3-410. However, Hanover, the drawee, having paid the draft, is not in a position to assert, and it does not assert in this action, that the payment could be recovered for this reason. Hanover asserts that the charge-back, which it caused Branch to make to the plaintiff's account with Branch, was proper because the indorsement of Winter Park, one of the joint payees, was forged and Hanover has subsequently paid the full amount of the draft to Winter Park; i.e., to the person entitled to the entire proceeds.

Assuming arguendo that Geraldine M. Stallings had no right to retain any portion of the proceeds of the draft at the time of her indorsement to the plaintiff, we turn to the right of the drawee, Hanover, to charge the draft back to the collecting bank, and, through it, to the plaintiff, approximately 27 months after the draft was paid by Hanover. G.S. 25-3-417 provides that any person who obtains payment of an instrument, and any prior transferor thereof, warrants to a person who pays it in good faith that he has a good title to the instrument or is authorized to obtain payment on behalf of one who has a good title to it. This warranty is broken if such person claims through the forged instrument of a joint payee having any interest in the proceeds of the paper.

Article 4 of the Uniform Commercial Code, Chapter 25 of the General Statutes, is applicable to drafts forwarded for collection through a bank or banks. G.S. 25-4-207(1) provides that each customer or collecting bank who obtains payment of such paper, and each prior customer and collecting bank, "warrants to the payor bank *or other payor*," who in good faith pays the paper, that he has a good title to it or is authorized to obtain payment on behalf of one who has a good title thereto. With reference to the transaction involved in this action, Hanover is such "other payor," Chase was the collecting bank who

obtained payment, Branch was such prior collecting bank and the plaintiff was such prior customer. Paragraph (4) of G.S. 25-4-207 provides: "Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim." If, under this statute, or under G.S. 25-3-407, Hanover was entitled to proceed directly against the plaintiff for reimbursement of the amount paid by Hanover upon the draft, Hanover would not be liable to the plaintiff in this action for having caused Branch to make the charge-back against the plaintiff's account with Branch.

G.S. 25-4-406, relating to the duty of a customer of a bank to discover and report to his bank unauthorized signatures and alterations, has no application to the right of Hanover to proceed against the plaintiff for the recovery of the amount paid by Hanover upon this draft. The applicable rule is thus stated in 11 AM. JUR. 2d, Bills and Notes, § 1015:

> "It is generally recognized that the right of a maker or drawee to recover a payment made on a forged indorsement may be lost if he is guilty of negligence or laches whereby the position of the person receiving payment is changed to the damage of such person. Thus, it is held that a drawee may recover if, after discovery of the forgery, he is guilty of no negligence that is injurious to the person receiving payment. But delay in discovering a forged indorsement ordinarily is not negligence and does not preclude recovery, particularly where no injury to the holder results.

> "In order for a drawee or other person to recover a payment made upon a forged indorsement it is a general requisite that he give timely notice after discovery of the forgery. Prompt notice of the discovery of the forgery is not a condition precedent to suit, but if it is shown that the drawee or other payor on learning that an indorsement was forged did not give prompt notice of it, and that damage resulted, recovery of the payment by such person is barred. * * * But the damage occasioned by the delay must be established, and not left to conjecture."

[7, 8] The drawee of a draft is not held to know the signature of an indorser, whether the payee or an intermediate indorser.

He is under no duty to examine the draft to determine the genuineness of an indorsement, but may rely upon the warranty made to him by the person receiving payment that such person has title to the instrument. When, however, the drawee learns that an indorsement, necessary to the title of the person who has received payment, is forged, the drawee must then act with reasonable promptness or his right to recover from the person receiving payment, or a prior indorser, will be barred, to the extent of any loss which such person sustains by reason of the drawee's delay.

[9] Here, the plaintiff alleges Hanover negligently induced the plaintiff to rely upon Hanover's payment of the draft and thereby induced the plaintiff to pay over to Geraldine M. Stallings the amount received by it as the proceeds of the draft, and that Hanover thereby damaged the plaintiff in the amount of $11,107.71. Hanover, in its answer, has denied this allegation. Thus, the pleadings raised an issue of fact material to the plaintiff's cause of action. The affidavit in support of Hanover's motion for summary judgment is silent as to when Hanover discovered the forgery of Winter Park's indorsement. Thus, Hanover has failed to show that there is no genuine issue as to a material fact.

[10, 11] Furthermore, there is no rule of law establishing the time within which the drawee must notify the person receiving payment, or a prior indorser, that such person's title to the draft was defective by reason of a forged indorsement. A reasonable time for such action depends upon the circumstances in each case. 10 AM. JUR. 2d, Banks, § 636. Generally, summary judgment is not appropriate in actions wherein the right of recovery depends upon the exercise of reasonable care. Phillips, 1970 Supplement to McIntosh, North Carolina Practice and Procedure, 2d Ed., § 1660.5.

It was error to grant summary judgment in favor of Hanover upon the showing made on this record. The judgment of the Court of Appeals, affirming such summary judgment, is, therefore, reversed and the matter is remanded to the Court of Appeals for the entry by it of a judgment remanding this action to the superior court for further proceedings according to law.

Reversed and remanded.