A-1 Pavement Marking, LLC v. APMI Corp., 2009 NCBC 15.

STATE OF NORTH CAROLINA

COUNTY OF UNION

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 3186

A-1 PAVEMENT MARKING, LLC,

              Plaintiff,

    v.

APMI CORPORATION,
LINDA BLOUNT and GARY BLOUNT,

              Defendants.

**ORDER & OPINION**

*McGuire Woods LLP by Amy R. Worley and Bradley R. Kutrow for Plaintiff.*

*Baucom, Claytor, Benton, Morgan & Wood, P.A. by Rex C. Morgan for Defendants.*

Diaz, Judge.

{1}     Before the Court is Plaintiff's Motion for Partial Summary Judgment as to Defendant Gary Blount's Sixth Claim for Relief in Defendants' Second Amended Counterclaim alleging a breach of the North Carolina Wage and Hour Act (the "Motion").

{2}     For the reasons set forth below, the Court **GRANTS** the Motion.

I.

PROCEDURAL BACKGROUND

{3}     On 13 November 2007, Plaintiff A-1 Pavement Marking, LLC ("Plaintiff" or "A-1") filed suit against Defendants APMI Corporation, Linda Blount, and Gary Blount (collectively, the "Defendants"), asserting claims for (1) breach of contract, (2) conversion, and (3) unfair competition and unfair and deceptive acts

and practices, said claims arising from Plaintiff's purchase of certain assets from Defendant APMI Corporation ("APMI").

{4} On 20 December 2007, Defendants answered the Complaint and filed Counterclaims alleging that Plaintiff breached certain agreements, including Defendant Gary Blount's Employment Agreement (the "Employment Agreement").

{5} On 22 January 2008, Plaintiff filed an Amended Complaint.

{6} On 7 February 2008, Defendants answered the Amended Complaint and re-asserted their Counterclaims.

{7} On 20 February 2008, the case was transferred to the North Carolina Business Court.

{8} On 4 December 2008, the Court granted Defendants' motion to amend their Answer and Counterclaim. As part of the amendment, Gary Blount ("Blount") alleged that Plaintiff's breach of the Employment Agreement also constituted a breach of the North Carolina Wage and Hour Act (the "Act").

{9} Plaintiff filed a Second Amended Complaint and Answer to Amended Counterclaims on 4 February 2009.

{10} On 25 February 2009, Defendants answered and renewed their Counterclaims, including Blount's claim alleging a violation of the Act.

{11} Plaintiff filed the Motion on 8 April 2009, accompanied by a brief.

{12} Blount filed his brief in opposition on 11 May 2009.

{13} Plaintiff filed its reply on 21 May 2009.

{14} On 27 May 2009, the Court heard oral arguments on the Motion.

II.

THE FACTS[1]

A.

THE PARTIES

{15} A-1 is a North Carolina limited liability company. (2d Am. Compl. ¶ 1.) A-1 is one of a number of affiliated companies. (Blount Aff., Ex. 4.)

---

[1] The facts set forth herein are undisputed.

{16}    APMI is a North Carolina corporation.  (2d Am. Compl. ¶ 4.)[2]

{17}    Linda Blount is the sole shareholder of APMI.  (2d Am. Compl. ¶ 5.)

{18}    Gary Blount is the husband of Linda Blount.  (2d Am. Compl. ¶ 6.)

B.

THE EMPLOYMENT AGREEMENT

{19}    On 21 April 2006, Langevin Ventures, LLC (Plaintiff's predecessor in name and interest) agreed to purchase certain assets of APMI pursuant to an Asset Purchase Agreement (the "APA").  (2d Am. Compl. ¶ 8.)

{20}    At the time the APA was executed, Blount was serving as APMI's general manager.  (Blount Dep. 5:13–16, 30:14–31:2, July 9, 2008.)

{21}    Effective 21 April 2006, and in conjunction with the closing of the APA, Plaintiff hired Blount to serve as its General Manager pursuant to the Employment Agreement.  (2d Am. Countercl. ¶ 9.)

{22}    The Employment Agreement provided that Blount would be paid a bonus if A-1 attained certain performance goals.  (2d Am. Countercl. ¶ 10.)

{23}    The amount of Blount's bonus was to be "measured at December 31st for 2 consecutive years after the [APA] closes and [would] include compensation for reaching certain gross profit levels."  (Blount. Aff., Ex 1.)

{24}    The parties also agreed that old A-1's 2005 year-end gross profits (measured as of 31 December) would serve as the "base year" for purposes of calculating Blount's bonus.  (Blount. Aff., Ex 1.)

{25}    As was the case for establishing the base-year profit margin, the parties agreed that A-1's year-end gross profit margin for 2006 would be calculated by subtracting certain contract costs (to include direct materials, direct labor, and overhead) from gross revenues.  (Blount. Aff., Ex 1.)

{26}    Pursuant to the Employment Agreement, Blount was guaranteed at least a $5,000.00 annual bonus for the two (2) years the parties contemplated the bonus plan would be in place, unless A-1's gross profit margin decreased from the base-year amount.  (Blount. Aff., Ex 1.)

---

[2] In their briefs, the parties sometimes refer to APMI as "old A-1."

{27}    Blount would be eligible for a $20,000.00 bonus if A-1's gross profit margin exceeded the 2005 base-year level by 10% or more.  A 20% increase in A-1's gross profits from the 2005 base-year level meant that Blount would receive a $40,000.00 bonus.  Finally, if A-1's gross profits exceeded the 2005 base-year level by 30%, Blount was entitled to a $60,000.00 bonus.  (Blount. Aff., Ex 1.)

{28}    Blount served as A-1's General Manager from 21 April 2006 until early May 2007.  (2d Am. Countercl. ¶ 9; 2d Am. Compl. ¶ 27.)

{29}    For purposes of determining Blount's 2006 year-end bonus, Paul Digirolamo, A-1's accountant, calculated a 2005 year-end gross profit margin for old A-1 of $556,900.00.  (Digirolamo Aff. ¶ 4, Apr. 1, 2009.)

{30}    Plaintiff's accountant then determined that A-1 generated a gross profit for 2006 of $579,909.00,[3] which amounted to an approximate 4.1% increase over the 2005 base year.[4]  (Digirolamo Aff. ¶¶ 5–6, Apr. 1, 2009.)

{31}    Based on these calculations, Plaintiff paid Blount a $5,000.00 bonus for 2006.  (Digirolamo Aff. ¶¶ 5–6, Apr. 1, 2009.)

III.

CONTENTIONS OF THE PARTIES

{32}    Plaintiff contends it is entitled to summary judgment on Blount's Second Amended Counterclaim alleging a violation of the Act because (1) Plaintiff's evidence establishes that it paid Blount his bonus for 2006 in accordance with the terms of the Employment Agreement, and (2) Blount has not submitted evidence supporting his claim for additional bonus payments.  (A-1's Br. Supp. Mot. Partial Summ. J. 1.)

---

[3] Because the APA closed on 21 April 2006, Plaintiff's accountants undertook separate gross profit calculations for APMI and A-1 and then combined the two amounts to arrive at a $579,000.00 gross profit margin for the entire calendar year.  (Supp. Aff. Digirolamo ¶ 13, May 20, 2009.)

[4] Plaintiff's accountant applied Generally Accepted Accounting Principles ("GAAP") to arrive at his gross profit figures.  (Digirolamo Aff. ¶ 3, Apr. 1, 2009.)  GAAP are the official standards adopted by the American Institute of Certified Public Accountants through the Committee on Accounting Procedure, the Accounting Principles Board, and the Financial Accounting Standards Board.  *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 160 n.4 (2d Cir. 2000).

{33} Blount responds that there exists a genuine issue for trial as to the amount of the bonus he is due because: (1) Plaintiff has not presented sufficient evidence to support its claim that Blount is due only a $5,000.00 bonus for 2006; (2) the evidence Plaintiff has presented is incompetent and inadmissible; (3) in calculating Blount's bonus, Plaintiff improperly included old A-1's financial performance for the four (4) months immediately prior to the 21 April 2006 closing of the APA; (4) Plaintiff failed to produce all of the relevant accounting records related to the calculation of Blount's 2006 bonus; and (5) included in the records that Plaintiff did produce are a number of unexplained accounting entries that Blount contends led Plaintiff to understate its gross profits, which in turn adversely affected Blount's bonus compensation. (Defs'. Br. Opp. Pl's. Mot. Partial Summ. J. 4–10.)

IV.

PRINCIPLES OF LAW

A.

SUMMARY JUDGMENT STANDARD

{34} Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c) (2007).

{35} The moving party bears the burden of showing a lack of any triable issue of fact. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (*citing Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975)).

> The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim.

*Boudreau v. Baughman*, 322 N.C. 331, 342–43, 368 S.E.2d 849, 858 (1988) (*citing Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405 (1982)).

{36}    Once the moving party meets this burden, the non-moving party must "produce a forecast of evidence demonstrating that the [non-moving party] will be able to make out at least a prima facie case at trial." *Collingwood*, 324 N.C. at 66, 376 S.E.2d at 427 (*citing Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981)).

{37}    When considering a motion for summary judgment, a trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972).

{38}    "An issue is material if the facts alleged would constitute or would irrevocably establish any material element of a claim or defense." *Anderson v. Canipe*, 69 N.C. App. 534, 536, 317 S.E.2d 44, 46 (1984). "An issue is genuine if it may be maintained by substantial evidence." *Id.*

{39}    In deciding the motion, "'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.'" *Caldwell*, 288 N.C. at 378, 218 S.E.2d at 381 (*quoting* 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.15[3], at 2337 (2d ed. 1971)).

{40}    Finally, summary judgment is a drastic remedy that should be granted cautiously. *First Fed. Sav. & Loan Ass'n v. Branch Banking & Trust Co.*, 282 N.C. 44, 51, 191 S.E.2d 683, 688 (1972); *Volkman v. DP Assocs.*, 48 N.C. App. 155, 157, 268 S.E.2d 265, 267 (1980). Where the slightest doubt exists as to the merits of the motion, it should be denied. *Volkman*, 48 N.C. App. at 157, 268 S.E.2d at 267.

## B.

## THE NORTH CAROLINA WAGE AND HOUR ACT

{41}    "The Wage and Hour Act was enacted to safeguard the hours worked by and the wages paid to 'the people of the State without jeopardizing the competitive position of North Carolina business and industry.'" *Horack v. S. Real Estate Co. of Charlotte*, 150 N.C. App. 305, 309, 563 S.E.2d 47, 51 (2002) (*quoting* N.C. Gen. Stat. § 95-25.1(b) (2001)).

{42}    An employee may sue under the Act to recover wages due and owing pursuant to the terms of the employment.  N.C. Gen. Stat. § 95-25.22(a) (2007).

{43}    A "'[w]age' paid to an employee means compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation," and it includes (among other things) "bonuses, and other amounts promised when the employer has a policy or a practice of making such payments."  N.C. Gen. Stat. § 95-25.2(16).

{44}    An employer who violates the Act is liable for the unpaid wages with interest from the date each amount first comes due.  N.C. Gen. Stat. § 95-25.22(a).  The trial court also must double any such judgment as a form of liquidated damages unless the employer proves that it acted in good faith and that it had reasonable grounds for withholding payment, in which case the Court may decline to award liquidated damages or award a lesser sum.  N.C. Gen. Stat. § 95-25.22(a1).

{45}    Finally, if the Court finds a violation of the Act, it may order the employer to pay costs and a reasonable attorneys' fee.  N.C. Gen. Stat. § 95-25.22(d).


V.

ANALYSIS

{46}    After considering the Court file, the Second Amended Counterclaims, the briefs and materials submitted by the parties, and the arguments of counsel, the Court **GRANTS** Plaintiff's Motion.

{47}    Plaintiff has come forward with competent evidence demonstrating how it determined the amount of Blount's bonus for 2006.

{48}    Specifically, Plaintiff's evidence includes two (2) affidavits executed by Plaintiff's accountant, who (1) prepared old A-1's financial statements for 2005 (which provided the base-year gross profit level used to determine Blount's bonus for 2006), (2) prepared A-1's financial statements for 2006, including its gross profit margin, and (3) determined that Blount's bonus compensation for 2006 was $5,000.00, using the aforementioned gross profit figures and consistent with the terms of the Employment Agreement.

{49}    With this evidence, Plaintiff met its burden to show that an essential element of Blount's claim under the Act was non-existent—specifically, that Plaintiff failed to pay Blount his bonus as it accrued.  *See* N.C. Gen. Stat. § 95-25.22 (2007).

{50}    Accordingly, to avoid summary judgment, Blount was required to come forward with specific facts showing that there exists a genuine issue for trial as to his bonus compensation.  *See, e.g., Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 26–27 (1992) (holding that once the burden shifts to the non-moving party on a motion for a summary judgment, it is not enough to "'rest upon the mere allegations or denials of his pleading'" (*quoting* N.C. Gen. Stat. § 1A-1, Rule 56(e) (1983))).

{51}    Blount has failed to meet his burden.

{52}    First, Blount presented no evidence to contradict the methodology used by Plaintiff's accountant to calculate the gross profit margins used to determine Blount's bonus.

{53}    Instead, Blount's contention that Plaintiff's calculations are incorrect appears to be based on nothing more than a "feeling" that A-1's revenues were much higher than reflected on the financial statements.  (Blount Dep. 201:13–202:16.) Without more, however, Blount's allegation is insufficient to raise a genuine issue for trial.

{54}    In his affidavit, Blount contends that Plaintiff "eliminated" $113,993.00 in contract receivables in its 2006 financial statements that were due and owing from a subsidiary.  (Blount Aff. ¶ 5.)  According to Blount, had these receivables been included, A-1's gross profit figure for 2006 would have been $693,902.00, which should have netted Blount a $40,000.00 bonus.  (Blount Aff. ¶¶ 5–7.)

{55}    To support this argument, Blount relies on a set of "Consolidated Financial Statements" for the A-1 affiliated entities as of 28 February 2007 and 28 February 2006, which were prepared by Plaintiff's accountants on 12 July 2007. (Blount Aff., Ex. 4.)

{56}    Blount is correct that these statements reflect the elimination of inter-company receivables.  But the record is undisputed that Plaintiff's accountant did not rely on the consolidated statements to calculate Blount's bonus, but instead considered separate statements reflecting the financial performance of A-1 as a stand-alone entity.  (Digirolamo Aff. ¶¶ 4–6, Apr. 1, 2009.)

{57}    Nor does the record support Blount's attempt to ascribe an improper motive to the elimination of inter-company accounts receivables from the consolidated financial statements of Plaintiff and its related entities.

{58}    To begin with, Blount concedes that he is not an accountant.  (Blount Dep. 47:16–48:7, 206:20–22.)  As a result, he has no basis for opining on the substance of the consolidated financial statements.  (Blount Dep. 214:5–8.)

{59}    Additionally, the accounting methodology used by Plaintiff's accountant to generate the consolidated financial statements (which were not used to calculate Blount's bonus) is entirely consistent with GAAP.  When a parent company prepares consolidated financial statements, GAAP requires the parent to eliminate certain transactions among the parent and its affiliates, including accounts receivable, to avoid counting revenue twice and to accurately portray the operating results of affiliated companies as a single economic unit.  *See generally Farrell Enters., Inc., v. Comm'r of Revenue*, 707 N.E.2d 1088, 1091 n.11 (Mass. App. Ct. 1999) (stating that according to GAAP, "consolidated financial statements do not include gain or loss on transactions among the members of the group, and any intercompany profit or loss on assets remaining within the group is eliminated").  *See also* Blount Aff., Ex. 4, at 8 (explaining the need for consolidated financial statements).

{60}    For these reasons, Blount's concern regarding the elimination of certain receivables in the consolidated financial statement of the A-1 affiliated entities does not raise a genuine issue for trial.

{61}    At the hearing, Blount also contended that Plaintiff improperly included old A-1's financial results for the four (4) months immediately prior to the 21 April 2006 closing of the APA when it calculated Blount's bonus.

{62}    Accepting this assertion as true, A-1's error does not create a genuine issue for trial.

{63}    In this case, Plaintiff's accountant calculated that old A-1 generated a negative gross profit of $16,033.00 before the closing of the APA. (Supp. Aff. Digirolamo ¶ 10, May 20, 2009.)

{64}    Plaintiff's accountant then subtracted this amount from the $595,942.00 gross profit margin achieved by A-1 for the balance of 2006 to arrive at a total gross profit margin of $579,909.00. (Supp. Aff. Digirolamo ¶ 13, May 20, 2009.)

{65}    It may well be that Plaintiff's accountant erred in considering old A-1's loss for the four (4) months prior to the closing of the APA in determining Blount's bonus. First, the Employment Agreement states expressly that any measure of Blount's bonus over the relevant two (2)-year period would not begin until "after the [Asset] Purchase Agreement closes." (Blount Aff., Ex 1.) Second, holding Blount responsible for old A-1's performance for the first four (4) months of 2006 makes no sense in the context of an Employment Agreement (and related bonus plan) that did not take effect until 21 April 2006.

{66}    Nevertheless, even assuming A-1's calculation was improper, the error does not raise a genuine issue for trial because it is immaterial.

{67}    More specifically, even after excluding the $16,033.00 loss properly attributed to old A-l, A-1's gross profits of $595,942.00 represents an increase of $39,042.00 (or 7.01%) from the base-year gross profits of $556,900.00. As such, Plaintiff's gross profit margin for the balance of 2006 did not exceed the 2005 base amount by 10% or more, and thus, Blount's bonus compensation was unaffected by the purported error.

{68}    Blount also contends that the initial affidavit submitted by Plaintiff's accountant setting out the methodology used to calculate Blount's bonus should be stricken "because no . . . documentation was supplied" to support what Blount characterizes as "inadmissible opinion testimony." (Defs'. Br. Opp. Pl's. Mot. Partial Summ. J. 4.)

{69}    The Court disagrees.

{70}    The record shows that Plaintiff's accountant personally prepared the relevant financial statements and arrived at the $5,000.00 bonus amount that A-1 paid Blount. As a result, Plaintiff's accountant is not an expert witness, but is instead a fact witness, albeit one with specialized knowledge in accounting. *Cf. Turner v. Duke University*, 325 N.C. 152, 168, 381 S.E.2d 706, 716 (1989) ("Where a doctor is or was the [patient's] treating physician and is called to testify not about the standard of the [patient's] care but rather about the [patient's] treatment and the doctor's choice of surgical procedures, he is not an expert witness.").

{71}    Nor is the accountant's initial affidavit incompetent merely because it lacks supporting documents. Here again, because the accountant has personal knowledge of the relevant facts, the fact that his affidavit does not include supporting documents is of no legal moment. In any event, Plaintiff has remedied whatever deficiency might have existed in the initial affidavit by attaching the relevant documents to the accountant's supplemental affidavit filed on 21 May 2009.

{72}    Finally, Blount contends he was hampered in contesting the legitimacy of the $5,000.00 bonus figure because Plaintiff failed to produce all of the supporting documents.

{73}    The Court rejects this argument.

{74}    As required by Business Court Rule 17.4, the Court set an initial discovery deadline in this case of 24 October 2008. At the request of the parties, the Court extended that deadline to 30 January 2009.

{75}    Although Blount took some written discovery, he never moved to compel the production of whatever information he believed necessary to prosecute his claim. Blount also did not depose Plaintiff's accountant before the expiration of the discovery deadline, nor did he designate an expert to rebut Plaintiff's evidentiary showing.

{76}    Accordingly, while Rule 56(f) of the North Carolina Rules of Civil Procedure allows the Court to either deny a motion for summary judgment or grant

a continuance where a party provides a sufficient excuse for its failure to gather facts or evidence in opposition, there is no basis for granting such relief here.

## VI.
## CONCLUSION

{77}    Accordingly, for the reasons set forth above, the Court **GRANTS** Plaintiff's Motion and **DISMISSES** with prejudice that portion of Blount's Second Amended Counterclaim alleging a violation of the North Carolina Wage and Hour Act.

**SO ORDERED** this the 26th day of June, 2009.