**MENTHOR, S.A., Plaintiff,**

v.

**SWISS BANK CORP., and Manufacturers Hanover Trust Company, Defendants.**

**MANUFACTURERS HANOVER TRUST CO., Defendant and Third-Party Plaintiff,**

v.

**BANCO DI NAPOLI, Banco Popular De Puerto Rico and Chemical Bank, Third-Party Defendants.**

**No. 78 Civ. 4326(MEL).**

United States District Court, S.D. New York.

Oct. 15, 1982.

Cole & Dietz, New York City, for plaintiff; Joseph DiBenedetto, Margot B. Schonholtz, New York City, of counsel.

White & Case, New York City, for defendant Swiss Bank Corp.; Burton T. Ryan, Robert W. Griffith, New York City, of counsel.

Robert M. Rosenblith, New York City, for defendant and third-party plaintiff Manufacturers Hanover Trust Co.

Pavia & Harcourt, New York City, for third-party defendant Banco di Napoli; David A. Botwinik, Timothy J. DeBaets, New York City, of counsel.

Theodore P. Cohen, New York City, for third-party defendant Banco Popular de Puerto Rico.

John B. Wynne, New York City, for third-party defendant Chemical Bank; Thomas W. Cullen, New York City, of counsel.

LASKER, District Judge.

This action, which raises a number of complicated and technical questions of banking law, concerns a dispute between Manufacturers Hanover Trust Co., Swiss Bank Corp., Chemical Bank, Banco di Napoli and Banco Popular de Puerto Rico as to who is liable for the loss of seven checks totalling $52,059.72, which disappeared somewhere in the international banking system. The facts are as follows: [1]

In late December, 1977, Walter N. Rojas, an employee of Menthor, S.A. ("Menthor"), received from Exprinter Casa Bancaria ("Exprinter") seven checks drawn on Exprinter's account at Manufacturers Hanover Trust Co. ("MHT"). The checks were payable to various payees and all of the checks were endorsed in blank by the payees. At the time, Menthor maintained an account at Swiss Bank Corp. ("Swiss"), with whom Rojas transacted business on behalf of Menthor, using the name Herman R. Gfeller. Rojas restrictively endorsed each of the checks by stamping them "Only for deposit" in the account number assigned to Menthor,

---

1. The statement of facts is taken from the Stipulated Facts included in the parties' Pretrial Order, signed by counsel for all parties on June 25, 1981.

and signing the name Herman R. Gfeller. On December 23, 1977, Rojas sent the checks to Swiss by registered mail.

On January 18, 1978, Menthor sent a telex to Swiss inquiring as to the status of the checks. On January 23, 1978, Swiss telexed Menthor that the checks had been credited to its account as of January 20, 1978. In fact, the checks were not credited to Menthor's account then or at any other time.

In the meantime, four of the checks showed up at the New York City branch of Banco di Napoli ("BDN"). They were deposited in an account in the name of Alberto Enrique Esteban. At the time of the deposit, the checks were altered in that the stamp affixed by Rojas had been covered with black ink and the checks bore the signature "Esteban". BDN presented the checks through Chemical Bank ("Chemical") to MHT, which paid the checks and transmitted the proceeds through Chemical to BDN. The other three checks were deposited in Banco Popular do Puerto Rico, ("BPPR") also in an account in the name of Alberto Enrique Esteban. The three BPPR checks had been altered in the same manner as the BDN checks. BPPR presented the checks directly to MHT, and they were also paid by MHT without dispute. "Esteban" later withdrew the entire proceeds of all seven checks from both BDN and BPPR.

Menthor brings this action against MHT on grounds of wrongful conversion, pursuant to Section 3–419 of the Uniform Commercial Code, N.Y. Uniform Commercial Code (McKinney 1964) ("UCC"), and against Swiss for breach of contract to repay monies deposited. MHT has brought a third-party action against BDN, BPPR and Chemical for breach of warranties.

On the basis of the facts stipulated in the Joint Pre-Trial Order, motions for summary judgment pursuant to Fed.R.Civ.Pr. 56 have been made by Menthor against MHT and Swiss, and by MHT against BDN, BPPR

and Chemical. Swiss has cross-moved for summary judgment against Menthor, and BDN has cross-moved for summary judgment against MHT.

### (1) Menthor v. MHT

MHT does not dispute Menthor's contention that MHT paid on checks bearing forged endorsements, and that, under UCC § 3–419, the owner or holder of a check is entitled to recover from the drawee bank for conversion if the bank pays on a check bearing a forged endorsement. However, MHT contends that Menthor is no longer the holder of the checks and therefore does not have standing to bring an action against MHT. MHT argues that Menthor negotiated the checks to Swiss by delivery to Swiss with the necessary endorsement, and that, upon negotiation, Swiss, the transferee, became the holder. UCC § 3–202.

In response, Menthor and Swiss argue that Swiss was not the holder [2] of the checks, but merely Menthor's agent for their collection until Swiss received "settlement" or payment on the checks from the drawee bank, MHT, which never occurred.

Section 4–201(1) of the UCC provides that:

"prior to the time that a settlement of an item is or becomes final ... the bank is an agent or subagent of the owner and any settlement given for the item is provisional."

Section 4–213(3) specifies that the provisional credit referred to in section 4–201(1) "becomes final" "[i]f a collecting bank receives a settlement for an item." (emphasis added).

The Official Comment to § 4–213 explains:

"If previously [the collecting bank] gave to its customer a provisional credit ...

Menthor is sometimes referred to as the "holder" of the checks, and other times as their "owner." We attempt to adhere to the distinctions made by the parties. However, we note that the concept of the "holder" is a creation of Article 3, while ownership is a concept of Article 4. The drafters of the Code recognized that the two articles may be inconsistent in some respects, and provided that, in such an event, the provisions of Article 4 control. See UCC § 4–102.

its receipt of final settlement for the item 'firms up' this provisional credit and makes it final. When this credit given by it so becomes final . . . its agency status terminates. . ."

Thus, it appears that Menthor was at all times holder of the checks and Swiss was merely its agent for collection because Swiss never received a "final settlement" for the checks from MHT.

MHT argues that the agency relationship terminated when Swiss sent the telex to Menthor advising it that the checks had been received. However, MHT cites no authority for this argument, and we are unable to find any. To the contrary, it appears that under § 4–213(3), the question whether agency status has terminated depends on what transpired between the collecting bank and the drawee bank, not on transactions between the collecting bank and its customer.

It is arguable that the Article 4 sections of the Code relied on by Menthor are inconsistent with the Article 3 sections concerning negotiation relied on by MHT. However, the possible conflict presents no difficulty, because the Code explicitly provides that in case of conflict between Article 4, which governs bank deposits and collections, and Article 3, which states the general law of commercial paper, the provisions of Article 4 control. *See* U.C.C. § 4–102 ("In the event of conflict, the provisions of this Article govern those of Article 3.")

Accordingly, Menthor, as the owner of the checks, has standing to sue MHT for conversion under UCC § 3–419. There being no other defenses raised to Menthor's conversion claim, Menthor's motion for summary judgment against MHT is granted.

(2) *MHT v. BDN*

MHT's claim against BDN is based on U.C.C. § 4–207(1)(a) and (c), the statutory warranties of transfer or presentment. They read:

"Each . . . collecting bank who obtains payment or acceptance of an item . . . warrants to the payor bank . . . that

(a) he has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and . . .

(c) the item has not been materially altered. . ."

An alteration is material, under U.C.C. § 3–407, if it alters either "the number or relations of the parties" or "the writing as signed, by adding to it or by removing any part of it." MHT contends that it is entitled to summary judgment against BDN on the basis of a showing that (a) BDN presented the checks to MHT for payment and MHT paid on them and (b) that the checks were materially altered. The former point has been stipulated, while the latter, MHT argues, is undeniable in view of the presence of the large black mark on the back of the checks which covers the words "only for deposit."

BDN raises a number of defenses to MHT's motion for summary judgment, which are discussed and decided seriatim below:

(a) Section 3–406:

Section 3–406 provides:

"Any person who by his negligence substantially contributes to a material alteration of the instrument . . . is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor . . ."

BDN contends that Menthor, through the actions of its agent Rojas, was negligent in two respects. First, Rojas signed the name Gfeller underneath the "only for deposit" stamp, although the signature was not necessary for the deposit of the checks. BDN contends that had the signature not been present, its tellers might have noticed the black mark on the checks. Second, BDN contends, Rojas signed the checks "in blank," making them freely negotiable.

■ The argument borders on the frivolous. Although it may not have been necessary for the checks to have been signed, it was not negligent for Rojas to have signed them—he could hardly be expected to

have imagined that someone would obliterate the stamped words "only for deposit." As for the contention that the checks were signed "in blank," it is simply inaccurate. One can see through the black mark that the signature follows the words "only for deposit."[3] There is absolutely no evidence that his signature diverted—or could reasonably be believed to have diverted—the attention of BDN's letters from the bold black line which obliterated the restrictive endorsement "Only for Deposit."

**(b) Section 4–406(1) and (2):**

■ Section 4–406 provides that when a bank sends its customer a statement accompanied by items paid, the customer must use reasonable care to examine the statement and items paid, and that if he fails to do so, he may not assert against the bank any losses due to alterations or unauthorized signatures. BDN asserts that Menthor was negligent in failing to timely examine its statements. The purported negligence is that Menthor did not inquire of Swiss as to the status of the checks after Swiss sent the confirming telex, January 23, 1978, until March 16, 1978. Esteban had withdrawn the proceeds of the checks from BDN by the end of March.

As Menthor persuasively responds, section 4–406 is inapplicable because Menthor was not a customer of MHT, and consequently was not sent any MHT statements. The checks in question were drawn on the account of Exprinter and it was to Exprinter that MHT sent statements. Although, as BDN points out, Menthor is a wholly-owned subsidiary of Exprinter, no showing has been made that there is any basis for piercing the corporate veil so as to attribute any negligence of Exprinter (if there was any negligence) to Menthor.[4]

BDN argues further that even if Menthor cannot be held accountable for Exprinter's failure to check its MHT statements, Men-

thor can be held responsible for its failure to check its own statements from Swiss. However true that may be, section 4–406 provides that the defense of failure to examine bank statements is a defense of the bank that sent the statements, which, in this case, is Swiss, not BDN.

**(c) Section 4–406(5):**

■ Section 4–406(5) provides that if the payor bank has a valid defense against its customer and waives that defense, it may not assert a claim against the collecting bank. BDN contends that MHT has waived the defenses against Menthor which BDN is attempting to assert by this motion.

Section 4–406(5), by its terms, applies only to the 4–406 defenses. *See Girard Bank v. Mount Holly State Bank,* 474 F.Supp. 1225, 1236 (D.N.J.1979). The only 4–406 defenses which BDN asserts to be applicable to this action are 4–406(1) and (2), which, as explained in the previous section, are not valid defenses. Accordingly, MHT has not waived any valid defenses, and may assert its claim against BDN.

**(d) Commercial Reasonableness:**

■ BDN asserts that it acted in a commercially reasonable manner in accepting the checks from Esteban, because there are circumstances in which it is appropriate to accept checks which contain strike-outs.

MHT responds that commercial reasonableness is not a defense to a claim on a warranty of presentment, because liability for a breach of a warranty of presentment is absolute.

Neither party submits any authority on the question whether liability on a warranty of presentment is absolute, and we have been unable to find any. However, MHT's position appears to be the more acceptable.

The subsection of the Code which provides for warranties of presentment with

---

**3.** Menthor has submitted the original of the seven checks for inspection by the Court.

**4.** Moreover, the attempt to attribute Exprinter's conduct to Menthor is an effort by BDN to accomplish indirectly what it cannot do direct-

ly. A motion made by BDN in 1980 to implead Exprinter as a fourth-party defendant was denied on the grounds that it had not been timely made.

respect to alterations, section 4–207(1)(c), simply provides that the collecting bank "warrants" that there have been no material alterations. By contrast, under the immediately preceding subsection, 4–207(1)(b), the collecting bank warrants that it "*has no knowledge* that the signature of the maker or drawer is unauthorized." (emphasis added) The difference between subsections (b) and (c) suggests that the collecting bank's knowledge or lack of knowledge as to whether there have been material alterations is irrelevant.

Moreover, if commercial reasonableness were a proper defense to a warranty of presentment, one would expect to find some mention of that fact, as well as a discussion of what constitutes commercial reasonableness, in the commentaries on section 4–207. However, neither the Official Comment to the section nor White and Summers' treatise on the Uniform Commercial Code gives any indication that liability on a warranty of presentment for a material alteration is to be other than absolute. *See* J. White & R. Summers, *Handbook of the Law Under the Uniform Code* § 15–5, 597–606 (2d ed. 1980). *See* also 9 N.Y. Juris 2d, Banks & Financial Institutions § 419 at 665–666 "Therefore, if a bank pays a check which is materially altered, it may recover from the . . . collecting bank to whom it paid the check damages for breach of warranty against material alteration." In fact, White and Summers mention only one defense to a claim of material alteration: untimely assertion of the alteration. *Id.* at 603–606.

Moreover, the purpose behind the establishment of warranties of presentment appears to be to speed the check collection process by requiring only one bank, the bank which took in the item, to validate endorsements. If a defense of commercial reasonableness were to be read into the statute, that purpose would be in large part defeated, because banks later in the collection process would bear the risk that they might be liable for the loss if the material alteration or forgery was so carefully performed that the bank which received the item had not noticed it despite the use of commercially reasonable standards. Thus, if a commercial reasonableness defense were accepted, it would seem that the better the forgery, the more likely the drawee bank would be the one to pay for the loss. This result would run counter to the purpose of 4–207, which is to put the burden on the *first* bank in the sequence to assure that all endorsements are proper. *See Federal Deposit Insurance Corp. v. Marine National Bank,* 303 F.Supp. 401 (M.D.Fla.1969), *aff'd,* 431 F.2d 341 (5th Cir. 1970):

> "The reason for imposing the § 4–207 warranty as a matter of law is to speed up the collection and transfer of checks and to take the burden off each bank to meticulously check the endorsements of each item transferred. Following that logic, the first bank taking in the item for collection is primarily responsible for checking the endorsements to make sure that they are proper. Each bank then warrants to each subsequent bank in the collection chain that the endorsements are good. . . . This is reasonable because the first bank is in a better position to insure that it is taking the item from someone with good title than are subsequent banks in the chain."

303 F.Supp. 401, 403.

■ We conclude that commercial reasonableness is not a defense to a breach of warranty claim under 4–207(1)(c). In addition, it should be noted that the checks in question have been submitted to the Court by Menthor. While the question whether a bank's conduct has been commercially reasonable would ordinarily not be a subject for summary judgment, we have examined the checks, and note that one can read "only for deposit in the account 0–452–704148–00" underneath the black marks on the backs of most of them. Under the circumstances, we find that it was not commercially reasonable for BDN to have accepted the checks.

(e) Section 3–419(3):

■ Section 3–419(3) limits the liability of the collecting bank on a suit by the

owner of the check. As MHT points out, the section has no relevance to the instant motion, in which we are concerned only with BDN's liability to the payor bank.

**(f) Were the checks altered?**

■ Finally, BDN argues that there is a question of material fact as to whether the checks were in fact altered. BDN contends that there is no proof that the checks were ever restrictively endorsed.

The contention is rejected. Counsel for BDN, along with counsel for all other parties to the action, entered into a stipulation as to facts "stipulated as true for all purposes between plaintiff and the defendants in this action." One of the stipulated facts is that

"On December 23, 1977, Rojas restrictively endorsed each of said checks which total $52,059.72 by affixing a stamp thereto reading: 'Only for deposit in the account 0–452–704148–00' and signed the name Herman R. Gfeller directly below said stamp."

(Pre-trial Order, Stipulated Facts, ¶ 7). BDN has submitted no reason why it should not be bound by its stipulation. It is so bound.

For the reasons stated above, BDN's defenses to MHT's claim are without merit. MHT's motion for summary judgment against BDN is granted; BDN's cross-motion for summary judgment against MHT is denied.

**(3) *MHT v. BPPR***

■ MHT's motion for summary judgment against BPPR is based on the same grounds as its motion against BDN, discussed above. Moreover, MHT argues that BPPR has waived the right to assert affirmative defenses by failing to assert any in its answer.

BPPR states the same defenses raised by BDN, which are rejected above. The defenses are rejected on the merits. Accordingly we need not consider whether they should also be rejected as untimely.

MHT's motion for summary judgment against BPPR is granted.

**(4) *MHT v. Chemical Bank***

Chemical has raised no defenses to MHT's claim against it. MHT's motion for summary judgment against Chemical is granted.

**(5) *Chemical v. BDN***

■ Chemical raises against BDN the same warranty of presentment claim raised by MHT. BDN's sole defense is that Chemical failed to make a timely claim against BDN. BDN asserts that Chemical became aware of the alteration of the checks in August, 1978.

Even if Chemical had been tardy in informing BDN of the claim on the checks, BDN was not prejudiced thereby. According to the Stipulated Facts, BDN became aware of the claim on the checks on or about August 10, 1978, by notice from MHT. (Pretrial Order at 9, ¶ III(8)). BDN would have gained nothing by receiving a second notice as to the defects in the checks from Chemical.

Chemical's motion for summary judgment against BDN is granted.

**(6) *Menthor v. Swiss***

Menthor moves for summary judgment against Swiss on the grounds that Swiss has breached its contract to repay monies deposited with it by Menthor. Menthor argues that it is entitled to a presumption that Swiss received the checks because (1) there is a presumption that a letter which is properly posted reaches its destination, and (2) Swiss acknowledged receiving the checks by its telex of January 23, 1978, which stated that the checks were received and credited to Menthor's account on January 20, 1978.

In opposition to the motion for summary judgment and in support of its cross-motion for summary judgment, Swiss has submitted an affidavit by its Assistant Vice President, Terrence P. Sweeney. Sweeney states that if the checks had been received, they would have been recorded in a log

book and photocopied, and a credit advice would have been prepared for them. He states that he has examined the records of the bank for the relevant periods, and finds that the checks in question were not logged, photocopied or the subject of a credit advice.

Swiss argues that the Sweeney affidavit is sufficient to rebut the presumption that the checks were received. It is not. The fact that Swiss can find no record of having received the checks does not prove that it did not receive them. For example, if the checks had been stolen by an employee of Swiss, the thief would hardly have been likely to make a record of the checks before stealing them. Similarly, if the checks had been lost due to carelessness, it is equally unlikely that the careless employee would have recorded their receipt.

▇ In fact, the Swiss affidavits are more revealing for what they omit than for what they say. Thus, Swiss has not submitted affidavits from the two employees who handled Menthor's account, to whom the letter accompanying the deposit was addressed, nor has it submitted an affidavit from the bank officer that it named at deposition as having been the likely author of the January 23rd telex. Where a bank sends a customer a telex stating that it has received and credited to his account a certain sum on a certain date, it cannot defeat the customer's claim by a cavalier statement that "the telex was sent in error." (Memorandum of Swiss at 8).

▇ Menthor is correct in its contention that it is entitled to a presumption that the checks were received by Swiss. The telex is similar to a receipted deposit slip: it was prepared by the bank for the express purpose of providing the customer with a reliable record of his transaction. Under New York law, when a bank seeks to avoid a customer's receipted deposit slip,

> "*the burden should be on the bank* to prove not only (1) that in fact the receipt is incorrect, but also (2) that in fact the customer has benefited by the error."

*Jiang v. First National City Bank,* 65 Misc.2d 150, 317 N.Y.S.2d 635, 637 (N.Y.Civ. Ct.1970) (Younger, Irving, J.) (emphasis added).

▇ Swiss has failed to carry its burden of proof. If at trial it were to produce only the evidence set forth in the affidavits submitted in support of its motion, a directed verdict would be entered against it.

Although Swiss has clearly not shown that it is entitled to summary judgment, neither has Menthor. While Menthor is entitled to the benefit of a presumption, a genuine fact question remains as to whether Swiss received the checks. Cases should be tried on the facts, when the facts are provable. For that reason, decision is reserved on Menthor's motion for summary judgment to allow Swiss to make an offer of proof in opposition to Menthor's motion within twenty days from the date of this memorandum.

\*　　\*　　\*

In sum, Menthor's motion for summary judgment against MHT, MHT's motions for summary judgment against BDN, BPPR and Chemical, and Chemical's motion for summary judgment against BDN are granted. BDN's motion for summary judgment against MHT is denied. Decision is reserved on Menthor's motion for summary judgment against Swiss. Swiss may submit an offer of proof within twenty days. Swiss' motion for summary judgment against Menthor is denied.

It is so ordered.