SAVINGS BANKS TRUST COMPANY,
Plaintiff,

v.

FEDERAL RESERVE BANK OF NEW
YORK and American Savings
Bank, Defendants.

No. 83 Civ. 5824 (HFW).

United States District Court,
S.D. New York.

Jan. 17, 1984.

Cullen & Dykman by Peter J. Mastaglio, Terry D. Weissman, Garden City, N.Y., for plaintiff.

Breed, Abbott & Morgan by Joseph P. Dailey, Joseph J. Tesoriero, New York City, for the Federal Reserve Bank.

Thacher, Proffitt & Wood by Raymond S. Jackson, Jr., New York City, for American Savings Bank.

## MEMORANDUM DECISION

KEVIN THOMAS DUFFY, District Judge.

Defendant Federal Reserve Bank of New York (Federal Reserve Bank) moves for summary judgment pursuant to Fed.R. Civ.P. 56. This suit was commenced on August 5, 1983 by plaintiff Savings Banks Trust Company (Savings) to recover $171,-361 paid by Savings on a check drawn by the Franklin Savings Bank (Franklin), a predecessor in interest to defendant American Savings Bank (American). Savings is a bank organized pursuant to New York law having its principal place of business in Manhattan. American, a bank organized under New York law, has an office for the transaction of business in Manhattan. The check was stolen from Franklin and a stop payment order was issued to Savings on April 20, 1981. The Federal Reserve Bank was the collecting bank which presented the check to Savings for payment in 1982. Savings seeks to hold the Federal Reserve Bank liable for a breach of a warranty of material alteration and on a theory of subrogation under the Uniform Commercial Code.

This is a civil action in which a Federal Reserve Bank is a party and therefore jurisdiction is conferred on the district court by 12 U.S.C. § 632 (Complaint ¶ 5). This is the sole basis for federal jurisdiction. I am writing this decision because Judge Werker is recuperating from an illness.

### The Facts

The facts are not disputed. Sometime before April 20, 1981 a signed teller's check drawn on a Franklin account at Savings and bearing the number 215548 (Check No. 215548) was stolen from Franklin. The fact of the theft has been stipulated to by Franklin for purposes of this action. The check had been signed by Franklin, but was otherwise incomplete. Franklin dis-covered the theft and on April 20, 1981 issued an oral stop payment order covering the stolen teller's check to Savings, the drawee of the check. A written stop payment order was sent by Franklin to Savings on April 21, 1981. The identity of the person who stole check no. 215548 and the circumstances surrounding the theft are unknown to the Federal Reserve Bank and are not relevant to the determination of the instant motion.

The amount, date and payee spaces of check no. 215548 were completed by an unknown person. The sum of $171,361 was inserted as the amount, October 6, 1982 was inserted as the date, and "Project Six, Inc." was inserted as the payee.

The check was deposited in an account at the Gateway Bank in Greensboro, North Carolina and forwarded for collection through normal bank channels to the Federal Reserve Bank of New York, where it was received on October 22, 1982. At 10:53 a.m. on October 22, 1982, the Federal Reserve Bank presented the check for collection to Savings pursuant to its Thrift Institution Collection Arrangement (TICA), by delivery to a TICA messenger of Savings. The TICA collection arrangements are incorporated in an Operating Circular of the Federal Reserve Bank and under the Uniform Commercial Code have the force of a binding agreement upon all participating institutions. See UCC § 4–103(2). Savings stamped the check "Payment Stopped" and returned the check to the Federal Reserve Bank at 7:58 p.m. on October 26, 1982, a day after the period for a timely dishonor expired. See Affidavit of Thomas E. Nevius, Manager of the Check Adjustment Department of the Federal Reserve Bank of New York, sworn to December 8, 1983, at ¶ 4.

The Federal Reserve Bank did not receive wire notice of nonpayment from Savings. It sent the check back through normal collection channels on October 27, 1982 and credited the account of Savings. On December 2, 1982, the check again arrived at the Federal Reserve Bank with an Allegation of Late Return filed by the deposi-

tary bank (Nevius Aff. ¶ 8). The Allegation of Late Return stated that the late return by Savings caused the depositary bank to "incur financial loss, because of lack of authority to charge the item back to" the customer (Exhibit E to the Nevius Aff.).

On December 2, 1982 the Federal Reserve Bank sent check no. 215548 along with the Allegation of Late Return to Savings and informed Savings that its account had been debited for $171,361. The Federal Reserve Bank of New York further notified Savings that the debit was provisional and subject to Savings' "denial of the allegation as set forth in formal documentation to this bank within fifteen business days of this charge, upon receipt of which we will reverse the charge. No such action by you in this period will cause the debit to be final" (Exhibit H to the Nevius Aff.). The Federal Reserve Bank of New York did not receive a denial of the Allegation of Late Return from Savings and the provisional debit became final upon the expiration of fifteen business days from December 2, 1983. *See* Local Rule 3(g) Statement of Uncontested facts submitted by the Federal Reserve Bank.

## I.

Under section 4–207(1)(c)[1] of the New York Uniform Commercial Code (McKinney 1964) (UCC), a warranty against material alteration is given only to a payor bank which in good faith pays an item. Savings contends that it was a good faith payor as a matter of law. Alternatively, it argues that at the least there is a triable issue of fact as to whether it paid the check in good

faith. I find these contentions to be without merit.

█ Having been expressly instructed by its customer to stop payment on check no. 215548 and having ignored this direction, Savings is not a "payor in good faith" within the meaning of the UCC. "A bank ... is considered as acting in good faith, where the bank has no notice of any stop payment order placed against the check nor of any defense or claim against it." H. Bailey, *Brady on Bank Checks*, § 8.5 at 8.5 (1983 Cumulative Supp. No. 2).

As noted by the Federal Reserve Bank, it is admitted that Savings received a stop payment order from Franklin on April 21, 1981 (Complaint ¶ 15). Therefore, Savings could not be a payor in good faith under § 4–207(1)(c). It did not dishonor check no. 215548 in a timely manner. It also failed to follow the advice of the Federal Reserve Bank that it could reverse the charge to its account by returning the check with a notice of disclaimer. Savings did not file such a denial. It knowingly paid the check over a stop payment order and then sat on its rights and let the provisional debit become final. The only reasonable conclusion to draw from the uncontested facts is that Savings was not a payor in good faith.

## II.

Having paid check no. 215548 over a stop payment order from Franklin, Savings seeks to relieve itself from liability by suing a holder in due course and contending that it stands in the shoes of the customer whose instructions it failed to carry out. Savings contends that under UCC § 4–407[2]

---

**1.** N.Y. UCC § 4–207(c) provides:

(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

\*      \*      \*      \*      \*      \*

(c) the item has not been materially altered, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith

(i) to the maker of a note; or

(ii) to the drawer of a draft whether or not the drawer is also the drawee; or

(iii) to the acceptor of an item with respect to an alteration made prior to the acceptance if the holder in due course took the item after the acceptance, even though the acceptance provided "payable as originally drawn" or equivalent terms; or

(iv) to the acceptor of an item with respect to an alteration made after the acceptance.

**2.** N.Y. UCC § 4–407 provides:

If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to

a payor bank which has paid a check over a stop payment order has a right in order "to prevent unjust enrichment" and "to prevent loss" to assert, among other things, (a) as a subrogee of a holder in due course a claim against the drawer, and (b) as a subrogee of the drawer a claim against a holder. Savings' Mem. of Law at 8.

■ In order for Savings to succeed under § 4–407, it must show that the Federal Reserve Bank was unjustly enriched as a result of payment of the check. *Swiss Credit Bank v. Balink*, 614 F.2d 1269 (10th Cir.1980); *Sunshine v. Bankers Trust Co.*, 34 N.Y.2d 404, 358 N.Y.S.2d 113, 314 N.E.2d 860, *modified as to costs award*, 34 N.Y.2d 994, 360 N.Y.S.2d 419, 318 N.E.2d 608 (1974). Since Savings does not allege that the Federal Reserve Bank was unjustly enriched, the claim must be dismissed on the pleadings. The record demonstrates that the Federal Reserve Bank acted solely in its capacity as a collecting bank under the Federal Reserve Act without knowledge of the underlying facts. It was not unjustly enriched.

Under UCC § 4–407, Savings may be subrogated to the rights of Franklin against the Federal Reserve Bank only with respect to the transaction which gave rise to the dispute. The intent of § 4–407 is clear from the official comment to § 4–407(c):

3. Subsection (c) subrogates the bank to the rights of the drawer or maker against the payee or other holder with respect to the transaction out of which the item arose. If, for example, the payee was a fraudulent salesman inducing the drawer to issue his check for defective securities, and the bank pays the check over a stop order but reimburses the drawer for such payment, the bank should have a basis for getting the

money back from the fraudulent salesman.

■ As noted by the Federal Reserve Bank, subrogation under 4–407 is limited to actions against parties whom the drawer himself might sue on the underlying action. *Manufacturers Hanover Trust Co. v. Ava Industries, Inc.*, 98 Misc.2d 614, 414 N.Y. S.2d 425 (Sup.Ct., N.Y.County 1978); *Commercial Insurance Co. of Newark N.J. v. Scalamandre*, 56 Misc.2d 628, 289 N.Y. S.2d 489 (Civ.Ct.1967). The complaint does not allege that the Federal Reserve Bank either participated in or had knowledge of the circumstances concerning the theft of check no. 215548. The complaint alleges that the Federal Reserve Bank was a holder in due course (¶ 16) whose only contact with the transaction was through its conduct as a collecting institution in "normal bank channels" (¶ 9). Since Franklin has no grounds to assert a claim against the Federal Reserve Bank, Savings has no right of subrogation.

Summary judgment in favor of the Federal Reserve Bank is granted; the claims alleged against it are dismissed.

### III.

12 U.S.C. § 632 provides that all suits in which a Federal Reserve Bank is a party shall be deemed to arise under the laws of the United States and the district courts of the United States shall have original jurisdiction. It was agreed among the parties that if the Federal Reserve Bank's motion for summary judgment was granted, the court would no longer have subject matter jurisdiction over the case. This is a dispute between citizens of the same state which belongs in state court. Accordingly, the complaint is dismissed pursuant to Fed.R.

prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights (a) of any holder in due course on the item against the drawer or maker; and
(b) of the payee or any other holder of the item against the drawer or maker either on

the item or under the transaction out of which the item arose; and
(c) *of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose.*
(emphasis added)

Civ.P. 12(h)(3) for lack of subject matter jurisdiction.

SO ORDERED.