HARTFORD ACCIDENT &
INDEMNITY COMPANY,

v.

FIRST PENNSYLVANIA BANK,
N.A., Appellee,

v.

MELLON BANK (EAST) NATIONAL
ASSOCIATION, Appellant.

Nos. 88–1182, 88–1338.

United States Court of Appeals,
Third Circuit.

Argued Aug. 16, 1988.

Decided Oct. 14, 1988.

Alan C. Gershenson (argued), Jay W. Eisenhofer, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellee.

Robert A. Nicholas (argued), J. Bradford McIlvain, Reed Smith Shaw & McClay, Philadelphia, Pa., for appellant.

Before STAPLETON, and MANSMANN, Circuit Judges, and FISHER, District Judge.*

---

* Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation.

CLARKSON S. FISHER, District Judge:

This is a consolidated appeal from the district court's entry of summary judgment imposing liability for payment of an altered check on the collecting bank in the check-cashing process. The case involves a check # 76250 drawn on the account of WWF Paper Co.'s ("WWF") account at First Pennsylvania Bank, N.A. ("First Pennsylvania"). The check, dated December 9, 1983, was for $53,263.83 and payable to Fitch, Pruyn & Company.

Jurisdiction was based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, and the amount in controversy exceeds $10,000.00, exclusive of interest and costs.

In either December, 1983, or January, 1984, a number of WWF's checks were stolen from the mail, including the one here involved. Indeed, prior to the depositing of the check in question, several checks of WWF on First Pennsylvania accounts had been deposited with altered payees. In April, 1984, First Pennsylvania requested that WWF ascertain whether any outstanding checks had been stolen, in view the fact that the bank had become aware that checks had been stolen from the mails in WWF's area. On April 17, 1984, WWF placed a written stop-payment order on this particular check. That order notified First Pennsylvania of the name of the intended payee, as well as the check's original date and number.

On December 26, 1984, the check was cashed at the Mellon Bank and deposited into the account of Anna Rosciszewski. Her name appeared on the check as a named payee above that of the original payee, Fitch, Pruyn & Company. In addition to the alteration making Rosciszewski a payee, the date of the check had been changed from December 9, 1983, to December 9, 1984. On December 26, 1984, the check was sent to First Pennsylvania, who

honored it. Subsequently, on February 4, 1985, WWF notified First Pennsylvania that check # 76250 had been stolen. The following day First Pennsylvania notified Mellon and requested that Mellon cover the loss pursuant to § 4-207 of the Uniform Commercial Code, as adopted by the Pennsylvania State Legislature. This request was rejected.

Subsequently, Hartford Accident and Indemnity Co. ("Hartford") brought a subrogation action on behalf of WWF against First Pennsylvania to recover the face amount of the check. First Pennsylvania filed a third-party action against Mellon Bank for the same purpose. Mellon cross-claimed against Hartford on the theory of common-law negligence.

Both First Pennsylvania and Mellon then filed cross-motions for summary judgment. Hartford also moved for summary judgment against First Pennsylvania. On February 16, 1988, the district court granted Hartford's and First Pennsylvania's motions. Mellon's motion was denied.

Mellon then moved for reconsideration of the district court's order. That motion was denied, and this appeal followed.[1]

### I.

■ In granting summary judgment in favor of First Pennsylvania, the district court concluded that the check had been honored in good faith. Mellon contends that the district court improperly allowed First Pennsylvania to recover on the theory of breach of warranties of material alteration, under 13 Pa. C.S.A. § 4207(a)(3), which states in relevant part:

Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer or collecting bank warrants to the payor bank or other payor, who, in good faith, pays or

---

**1.** On March 16, 1988, Mellon appealed from the district court's February 16 order granting summary judgment in favor of First Pennsylvania. Court of Appeals No. 88–1182. Subsequently, however, Mellon moved to enforce a purported settlement agreement on Mellon's claim against Hartford. That motion was formally denied on

March 28, 1988, and a notice of appeal was filed April 21, 1988, from that order. Court of Appeals No. 88–1338. The appeals were consolidated on May 11, 1988, at Mellon's request. Mellon, however, challenges only the district court's decision granting summary judgment in favor of First Pennsylvania.

accepts the item that ... the item has not been materially altered.

The centerpiece of the appellant's case is that the stop-payment order issued by WWF in April, 1984, constituted an express instruction not to pay on the check and, therefore, First Pennsylvania's subsequent payment of the check deprived it of the status of a "payor in good faith" under the law.

Under § 4–207 of the code, a payor bank may recover for breach of warranty against material alteration only if the item was paid in good faith. 13 Pa. C.S.A. § 1201 defines good faith as "honesty in fact." This definition must be viewed subjectively; a finding of bad faith must be predicated on a showing of dishonesty. *Johnson & Johnson, Inc. v. DAL Int'l Trading Co.,* 798 F.2d 100, 105 (3d Cir. 1986); *Martin Marietta Corp. v. New Jersey Nat'l Bank,* 612 F.2d 745, 751 (3d Cir. 1979). Likewise, mere negligence does not preclude a finding of good faith. *Johnson & Johnson, Inc., supra,* at 105; *Martin Marietta, supra,* at 751; *First National Bank of St. Paul v. Trust Co. of Cobb County,* 510 F.Supp. 651, 656 (N.D.Ga. 1981). "The negligence of a drawee bank is not a bar to recovery on a statutory warranty provided by the Uniform Commercial Code."

Mellon contends that, in fact, First Pennsylvania's conduct with regard to the check and subsequent stop order goes well beyond simple negligence. Rather, the appellant maintains that the Bank's payment in the face of a previously-issued stop order precludes any finding of good faith. In *Savings Banks Trust Co. v. Federal Reserve Bank,* 577 F.Supp. 964 (S.D.N.Y. 1984), the court noted:

A Bank ... is considered acting in good faith, where the Bank has no notice of any stop payment order placed against the check nor of any defense of claim against it.

*Id.* at 966, *quoting* H. Barley, *Brady on Bank Checks,* § 8.5 at 8.5 (1983 Cumulative Supp. No. 2). Indeed the appellant suggests that First Pennsylvania needed only to have followed the instructions of its customer, FWW, and not have paid the check. Although we generally agree that payment over a stop order would not be in good faith, Mellon ignores two very significant undisputed facts: First, the stop order on this check had expired; second, First Pennsylvania did not pay the check until two months after the order had elapsed. Under Pennsylvania law, written stop orders expire in six months unless renewed by the customer. 13 Pa. C.S.A. § 4403. Upon its expiration, the order is ineffective and the bank may pay the check.

The appellant has placed much reliance on *Savings Banks Trust Co. v. Federal Reserve Bank, supra.* Therein, the district court concluded that a check paid over a stop-payment order was not paid in good faith, *Id.* at 966, and the Second Circuit affirmed. 738 F.2d 573 (2d Cir.1984). The parties in this case are at odds, however, over whether a valid stop order was in effect in the *Savings Banks* case. Although the district court's recitation of facts does not specifically state whether or not the stop-payment order in that case had lapsed, phrases in the court's opinion such as "having paid Check No. 21548 over a stop-payment order from Franklin" and "it knowingly paid the check over a stop-payment order" fairly lay the matter to rest. 577 F.Supp. at 966. The decision in the *Savings Banks* suit, *supra,* is clearly premised on the payment over a valid and effective stop order. Accordingly, it is distinguishable.

As a result of the expiration of the order, First Pennsylvania cannot be said to have the actual knowledge which would deny it the status of a good-faith payor. The Code expressly provides that a stop-payment order is effective for six months. The obligations which a bank incurs as a result of its customer's imposing a stop order on a check do not continue in perpetuity. Indeed, the Code and the Pennsylvania Legislature have drawn the line on those obligations at six months. To conclude otherwise would be to either ignore or rewrite the clear wording of the Pennsylvania statute.

The district court properly rejected Mellon's argument that payment in the face of a stop order in this case vitiated First Pennsylvania's good faith in paying the check. In granting summary judgment, the court stated:

Since the stop order was never renewed, it cannot be said that First Pennsylvania consciously disregarded the order.

In fact, it is clear on the facts presented that First Pennsylvania did everything within its power, given the circumstances, to avoid the unfortunate turn of events that transpired. First Pennsylvania was neither negligent nor reckless and certainly cannot be said to have been subjectively dishonest.

App. 191.

Equally unavailing is the appellant's suggestion that First Pennsylvania did not pay the check in good faith based on its knowledge that several of WWF's checks had been stolen. This argument amounts to nothing more than a contention that First Pennsylvania should have known the check had been stolen. As discussed above, however, a finding of bad faith requires actual knowledge on the part of the payor. An objective inquiry into what the circumstances should have revealed to First Pennsylvania is simply not germane to the analysis. Accordingly, the district court properly concluded that First Pennsylvania paid the check in good faith.

## II.

■ Finally, Mellon contends that First Pennsylvania may not recover because it failed to timely notify Mellon of the breach of warranty. 13 Pa. C.S.A. § 4207(d) states:

Unless a claim for breach of warranty is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making the claim.

In this regard, Mellon contends that First Pennsylvania had an opportunity to review the check on December 27, 1984, and advise Mellon of any problems. The appellee, on the other hand, maintains that it did not

know that this particular check was stolen until February 4, 1985. There is no doubt that First Pennsylvania notified Mellon on February 5 that the check was stolen. At that time, First Pennsylvania requested that Mellon cover the loss pursuant to § 4-207 of the Uniform Commercial Code. Mellon, however, rejected that claim.

Under § 4-207, the time for notification of a breach of warranty is measured from the date when the payor first learns of the breach. *Home Indemnity Co. v. First Nat'l Bank of Waukegan*, 659 F.2d 796, 798 (7th Cir.1981). The record indicates that First Pennsylvania first learned of the alteration on February 4, 1985. At that time, Linda Howe, an investigator with the bank, was notified by Gloria Gregg of WWF Paper Company that the check in question had been altered and negotiated at the Mellon Bank.

Mellon contends that the stop order placed on the check gave First Pennsylvania notice that the check had been stolen and, therefore, the bank had actual knowledge of the breach when it received and paid the check on December 26, 1984. This argument must fail, in view of the fact that the expiration of the stop order left First Pennsylvania completely unaware that any further problems existed with regard to this check. Because WWF did not renew the stop order, First Pennsylvania certainly cannot be required to assume that circumstances in December, 1984, when the check was cashed, were the same as they existed in April, 1984, when the stop order had been placed. We therefore conclude that First Pennsylvania actually learned of the breach on February 4, when Gregg notified First Pennsylvania's investigator. Accordingly, First Pennsylvania's notification to Mellon on the following day was eminently reasonable.

For the foregoing reasons, we will affirm the order of the district court.

MANSMANN, Circuit Judge, concurring.

Section 4-207 of the Uniform Commercial Code, 13 Pa. Cons. Stat. Ann. § 4207 (Purdon 1980), has dictated the result in

this case and I do not fault the majority's strict adherence to its provisions. I write today only to express dissatisfaction with the Code § 1201's definition of good faith upon which Mellon (East)'s liability was based.

Under § 4207 the payor bank has an action against the depository bank for breach of presentment warranty when the depository bank handles materially altered checks. A theory of liability without fault underlies the breach of warranty action and allocates the loss to the depository bank as the first taker even if it exercised the highest degree of care in handling the altered check. It is perceived that the depository bank should bear the loss since it is in the best position to protect against the possibility of loss. Hawkland, Leary and Alderman, *Uniform Commercial Code Series*, § 4207:03 (1984).

The Code can be construed as carving out limited exceptions to the imposition of this warranted liability. One possible defense to a claim of material alteration is untimely assertion of the alteration. 13 Pa. Cons. Stat. Ann. § 4207(d); *see also* J. White and R. Summers. *Handbook of the Law Under the Uniform Code*, § 15–5 (1980).

The second exception, and this is the cause for my concern, occurs when the collecting bank does not act in good faith in exercising its right of collection under § 4207.

Good faith is defined under the Code as "Honesty in fact in the conduct or transaction concerned." 13 Pa. Cons. Stat. Ann. § 1201. The cases dealing with the collecting bank's good faith requirement can be read as holding that only a dishonest payor will not receive the warranties. *Cf. First National Bank of St. Paul v. Trust Company of Cobb County*, 510 F.Supp. 651 (N.D.Ga.1981) (negligence not a bar to recovery); *Menthor, S.A. v. Swiss Bank Cor-*

*poration*, 549 F.Supp. 1125 (S.D.N.Y.1982) (commercial reasonableness is not standard). Adherence to the position that a defeat of good faith can only be accomplished by a demonstration of subjective dishonesty underscored Mellon (East)'s liability in this case.

The majority correctly identifies the cornerstone of Mellon (East)'s case as its assertion that First Pennsylvania's knowledge of the prior stop payment order on the check negated a finding that its claim for breach of warranty was presented in good faith. Mellon (East) relies strongly on *Savings Bank & Trust Co. v. Federal Reserve Bank*, 577 F.Supp. 964 (S.D.N.Y.), *affd* 738 F.2d 573 (2d Cir.1984). This case held that a drawee bank which had received a stop payment order from its customer had knowledge of suspicious circumstances sufficient to bar it from maintaining an action for breach of the presenter's warranty against the collecting bank. Although much has been made of the factual dispute as to whether the stop payment order was actually in effect, what I stress as the importance of this case is its departure from the strict liability standard imposed in cases alleging a breach of the presentment warranty. In *Savings Bank*,[1] lack of good faith was not equated with dishonesty; instead, an element of negligence was integrated by the fashioning of a "suspicious circumstances" test. In a per curiam opinion the Court of Appeals for the Second Circuit held that "[K]nowledge and disregard of suspicious circumstances are sufficient to vitiate an assertion of good faith where negotiable instruments are concerned." *Id.* at 574.

If writing on a clean slate today I would adopt the leverage afforded by the suspicious circumstances test in making good faith determinations in presentment warranty cases.[2] By so stating, I do not form

1. The decision has been criticized for its departure from the Code's definition of good faith. *See* H. Bailey and R. Hagadorn, *Brady on Bad Checks*, § 8.532 (Cum.Supp.1987); B. Clark, *The Law of Bank Deposits, Collections and Credit Cards*, § 6.3(3) (Cum.Supp.1987).

2. We note that in *Johnson & Johnson Products, Inc. v. Dal International Trading Company*, 798 F.2d 100 (3d Cir.1986), Judge Stapleton, while stating that the UCC imposes no burden of inquiry and, in fact, rejecting the suspicious circumstances test, made an assumption that, under New Jersey law, a purchaser under Article 2

an opinion as to whether the facts in this case would survive suspicious circumstances scrutiny, merely that Mellon (East) should have been allowed the latitude provided by such a test.

Two other sections of the Code, dealing with forged signatures, specifically incorporate a standard of care for banks. Under § 3406, a drawer who has substantially contributed to the making of an unauthorized signature may not assert the lack of authority against a bank "who pays the instrument in good faith and *in accordance with ... reasonable commercial standards.*" (Emphasis added.) Section 4406, which requires a bank customer to examine the bank statements timely and to notify the bank of any unauthorized signatures, nevertheless allows recovery against the bank despite failure to do so if the customer establishes *"lack of ordinary care"* on the part of the bank paying the items. (Emphasis added.) *Western Casualty & Surety Company v. Citizens Bank of Las Cruces,* 676 F.2d 1344 (10th Cir.1982).

I can see no rational basis for not imposing the duty to exercise reasonable care recited in §§ 3406 and 4406 to instances where two banks are involved. Why should conformity with reasonable banking practice be excused on the basis that another commercial institution is involved in the subject transaction? To the contrary, an obligation to perform in accordance with commercial standards seems most appropriate in instances when both parties' dealings are governed by similar standards.

In its opinion the majority states that "[W]e generally agree that payment over a stop order would not be in good faith...." Unless the majority is implying that a payment over a stop order duplicates dishonesty this statement rings of negligence con-

siderations. What if the unauthorized payment resulted from failure to note the presence of the stop order? Such an event represents garden variety lack of due care, not an overtly dishonest act on the part of the bank. I believe, and feel the majority is in accord, that any payment over a stop order should deny the collecting bank its right to assert a breach of presentment warranty.[3]

An additional practical rationale for adopting a less restrictive definition of good faith rests upon the advanced technology of today's banking processes. An indication of the non-utility of the UCC in today's banking market is evidenced by some courts' refusals to apply the Code to automatic teller machine transactions. *Erva Corporation v. Swiss Bank Corporation,* 673 F.2d 951 (7th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 377, 74 L.Ed. 2d 511 (1982) (electronic fund transfers not within contemplation of Code drafters); *accord Delbrueck & Company v. Manufacturer's Hanover Trust Company,* 609 F.2d 1047 (2d Cir.1979); *see generally* Graziano & Baharoglu, *Automated Teller Machines: Boon or Bane?,* 91 Commercial Law Journal 451 (1986).

Sophistication has crept into both sides of the spectrum. A look at the reproduced copy of the check which is the subject of this matter is case in point. The addition of the payee and the change in the date clearly fit within the Code definition of material alteration, but, to the eye, admittedly an untrained one viewing a reproduced copy, evidence of the alteration was decidedly unglaring and perhaps indecipherable. If the theory behind the presentment warranty is premised upon the accepting bank being in the best position to uncover the alteration, the nefarious abili-

---

of the Code may not be certain of the existence of a certain flaw and still have knowledge of sufficient facts to keep him from being fairly characterized as having been "honest in fact." *Id.* at 106. I interpret this statement to indicate judicial acknowledgment of the possibility of adopting a more lenient approach than, unless I take an overly optimistic view of banking practice and practitioners, the almost impossible task of defeating the good faith requirement only by a showing of subjective dishonesty.

3. I note that, even adopting this broad approach, First Pennsylvania would, in the absence of suspicious circumstances, prevail over Mellon. There is no question that the stop payment order on the check had expired and had not been renewed. Here, however, suspicious circumstances might exist in that the payor bank had previously been notified that the check had been stolen.

ties of those on the wrong side of the check alteration game should at least be considered as a factor when it comes time to allocating the loss.

I would alert the UCC drafters to reconsider the imposition of strict liability necessarily imposed by its restrictive definition of good faith and to amend the Code to allow for consideration of factors other than overt dishonesty when determining loss based upon breach of the warranty of presentment.